De Forest C. Pitt, J.
This is a proceeding brought pursuant to article 78 of the Civil Practice Law and Rules. Petitioner, a Maryland corporation engaged in the manufacture of steel wire reinforcement mesh, seeks a judgment annulling and setting aside a determination made by respondent, J. Burch McMorran, as Superintendent of the Department of Public Works of the State of New York, by which it was decided that petitioner’s product does not meet the public works specifications of the State of New York. The effect of this determination is the prohibition of the sale of petitioner’s product for use in certain public projects in the State of New York.
The provision of said specification involved herein is as follows: “Preference will be given to articles or materials manufactured or produced within the United States, conditions of quality and price with duty being equal. Unless otherwise stated in the proposal or on the plans, it will be understood that only domestic articles or materials will be used on the job.” It appears that petitioner’s product is produced at its plant located in Baltimore, Maryland, and further, that the same is *170 made from what is known as open hearth hot-rolled steel rods purchased by petitioner from various countries in Western Europe and Japap. Such rods are represented by petitioner to be a semi-finislied raw material having virtually no other use than as a raw material in the manufacture of wire and wire products. The petition, supporting affidavits and exhibits submitted upon this proceeding by the petitioner combine to set forth in great detail the manner in which such steel rods are processed by petitioner in the production of its reinforcement mesh. It is sufficient here to note that the processing of the rods to the finished product necessitates an extensive and complex procedure involving the employ of at least some highly skilled personnel and several huge, specialized and valuable machines. It appears uncontroverted that the operation increases the hardness and tensile strength of the steel.
Clearly, the respondent has not only the authority, but the responsibility to promulgate standards which will insure the quality of materials used upon construction projects concerning him. It is suggested that the subject portion of the specification is necessitated, at least in part, by the impracticality of inspection of foreign manufacturing processes. The stated purpose of the quoted portion of the specification appears sound and proper. What remains to be determined is whether respondent’s interpretation of the same, and his determination affecting petitioner based upon such interpretation are equally correct.
It is conceivable that in the determination of the propriety of a given manufactured product it could well be necessary, or even crucial, to closely examine the qualities of each basic raw material employed in the production of the same. However, such necessity has not been shown in regard to petitioner’s product. The product is wire reinforcement mesh made from wire. The wire in the first instance is made from steel rods. It appears that the standards which the wire mesh must meet to be acceptable involve the mechanical properties of the wire and of the mesh, and that such properties are readily determinable by a testing of the same.
It is this court’s opinion that the respondent’s position that the petitioner’s product is not a domestic article or material in that it is not manufactured or produced in the United States is untenable. While not binding, it is most persuasive to note that the Federal Bureau of Public Roads of the United States Department of Commerce, as well as several of our sister States have, upon consideration of the question, determined that peti *171 tioner’s wire mesh is a domestic manufactured product. Employing what may be considered an extreme example to illustrate the factual situation presented, the court suggests that it would be indeed unreasonable to determine that a cake made and baked with care and precision by an American housewife was not entirely made by her in her American kitchen for the reason that the sugar used in such cake was produced in a foreign land.
It is not this court’s purpose to suggest that the respondent does not, of necessity, have a wide range of discretion in the exercise of his responsibilities and duties. As above indicated the subject specification is necessary and proper. However, interpreting such specification with a view toward its purpose it is found that the respondent’s interpretation falls without the realm of reasonableness, and that the determination in question was arbitrary and capricious and an abuse of respondent’s discretionary authority.
Petitioner, therefore, will be granted judgment annulling and setting aside respondent’s determination that petitioner’s mesh fails to comply with the subject portion of the Department of Public Works specifications and enjoining respondent from applying such portion of said specification so as to exclude petitioner’s product from use by reason of the same.